UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § <br> § |
| v. | § CRIMINAL NO. 4:21-CR-254-SDJ <br> § |
| MIGUEL ANGEL VARGAS VELEZ (3) | § <br> § <br> § |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Miguel Angel Vargas Velez's Consolidated Post-Trial Motions Pursuant to Federal Rules of Criminal Procedure 29 & 33. (Dkt. #224). The Government has responded in opposition. (Dkt. #231). Miguel Angel Vargas Velez ("Vargas Velez") has not filed a reply, and his deadline to do so has passed. Having considered the motions, the record, and the applicable law, the Court concludes that the motions should be **DENIED**.

**I. BACKGROUND**

On December 7, 2022, in the Third Superseding Indictment, Vargas Velez was charged with a single count of Conspiracy to Manufacture or Distribute or Conspiracy to Possess with the Intent to Manufacture or Distribute Methamphetamine in violation of 21 U.S.C. § 846 ("Section 846"). (Dkt. #183 at 1). The conspiracy was alleged to have occurred from approximately 2020 to 2022 between Vargas Velez, Michael Angelo Mitchell-Principe, Charlie Manuel Dejesus-Rivera, Cynthia Sanchez, Rudolfo P. Garza, Jr., and Jose Yancarlos Vargas Velez ("Yani").[1] (Dkt. #183 at 1).

---

[1] Mitchell-Principe pleaded guilty in September 2022, (Dkt. #147), Dejesus-Rivera pleaded guilty in December 2022, (Dkt. #181), Sanchez pleaded guilty in December 2022,

Vargas Velez proceeded to a jury trial. (Dkt. #206). Following the Government's case-in-chief, Vargas Velez moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. (Dkt. #214 at 2). The Court denied that motion. (Dkt. #214 at 2). Following Defendant's case-in-chief, Vargas Velez renewed his motion for judgment of acquittal under Rule 29, which the Court again denied. (Dkt. #214 at 2–3). After one-and-a-half days of deliberations,[2] the jury found Vargas Velez guilty of Count One of the Third Superseding Indictment and determined that the following quantity of methamphetamine was attributable to Vargas Velez:

> 50 grams but less than 500 grams of a mixture of substance containing a detectable amount of methamphetamine or 5 grams but less than 50 grams of methamphetamine (actual)

(Dkt. #219).

Vargas Velez now renews his motion for judgment of acquittal under Rule 29(c). In the alternative, he asks the Court to vacate the jury's verdict and grant him a new trial under Rule 33(a).

## II. DISCUSSION

Vargas Velez moves for a judgment of acquittal or, in the alternative, for a new trial. The Court addresses each motion in turn and concludes that neither has merit.[3]

---

(Dkt. #205), and Garza, Jr. pleaded guilty in December 2022, (Dkt. #180). Yani remains at-large.

[2] On the second day of deliberations, the Court excused Juror #5 for juror misconduct and replaced him with alternate Juror #14. (Dkt. #218 at 2). The jury was instructed to restart their deliberations with Juror #14.

[3] The Court notes that Vargas Velez's motion relies entirely on the arguments his counsel raised during trial. (Dkt. #224 at 2) ("The Defendant hereby reasserts each and every

**A. Motion for Judgment of Acquittal**

The Court first addresses Vargas Velez's motion for a judgment of acquittal. Vargas Velez argues that the Government presented insufficient evidence for the jury to find that he conspired to manufacture or distribute or conspired to possess with the intent to manufacture or distribute methamphetamine in violation of Section 846. (Dkt. #224 at 1).

It is true that courts have authority to set aside a guilty verdict and enter an acquittal. FED. R. CRIM. P. 29(c)(2). But the "jury's constitutional role in deciding criminal trials leaves little room for judicial second-guessing." *United States v. Crittenden*, 46 F.4th 292, 296 (5th Cir. 2022) (en banc). Review of jury verdicts is therefore "quite limited." *Id.* (quoting *Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)).

A trial court "can acquit a defendant found guilty by a jury only if 'no rational juror could have found guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Sanjar*, 876 F.3d 725, 744 (5th Cir. 2017)). This standard "does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). The factfinder is "free to choose among reasonable constructions of the evidence," and ultimately "retains the sole authority

---

ground previously set forth in all defense motions during trial and trial objections, including but not limited to Defendant's oral and written motions for judgment of acquittal.").

to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.* (quotations omitted).

Here, the jury found beyond a reasonable doubt that Vargas Velez conspired to manufacture or distribute or conspired to possess with the intent to manufacture or distribute methamphetamine in violation of Section 846. To convict Vargas Velez of this conspiracy, the Government had to prove beyond a reasonable doubt "(1) the existence of an agreement . . . to possess with intent to distribute; (2) knowledge of the agreement; and (3) voluntary participation in the agreement." *United States v. Lara*, 23 F.4th 459, 470–71 (5th Cir. 2022) (quotations omitted).[4] Critically, Vargas Velez "need not know all the details of the unlawful enterprise or know the exact number or identity of all the co-conspirators, so long as he knowingly participates in some fashion in the larger objectives of the conspiracy." *United States v. Brown*, 553 F.3d 768, 781 (5th Cir. 2008) (quotations omitted). Indeed, a defendant may be found guilty of conspiracy "even if he or she plays only a minor role." *Greenwood*, 974 F.2d at 1457.

At trial, the Government introduced several taped phone calls between an undercover law enforcement officer and Yani—Vargas Velez's brother—that took place on Vargas Velez's cellphone. These phone calls involved setting up sales of methamphetamine. *See, e.g.*, (Dkt. #228-41 at 1). For at least five of these calls, Vargas Velez answered *his own* cellphone, seemingly acknowledged that he knew the

---

[4] The agreement need not be "express" or "explicit," as "a tacit agreement will suffice." *United States v. Greenwood*, 974 F.2d 1449, 1457 (5th Cir. 1992).

4

caller (the undercover officer) was trying to reach his brother Yani, and either told the undercover officer that Yani would call him back or asked the undercover officer to wait while he got Yani on the line.[5] *See, e.g.*, (Dkt. #228-44 at 1). Shortly following at least two of these phone calls, codefendants Dejesus-Rivera and Mitchell-Principe delivered one kilogram of methamphetamine to the undercover officer.

This evidence presented at trial sufficiently ties Vargas Velez to the conspiracy. *First*, there is evidence that Yani, Dejesus-Rivera, and Mitchell-Principe agreed to violate federal drug laws by selling large quantities of methamphetamine to the undercover officer. This agreement is evident from the timing of the phone calls between Yani and the undercover officer, in which they discussed drug sales, and the subsequent delivery of the methamphetamine by Dejesus-Rivera and Mitchell-Principe to the undercover officer on two separate occasions. *See, e.g.*, (Dkt. #228-48). *Second*, there is evidence that Vargas Velez knew about this agreement based on (i) Vargas Velez receiving at least five phone calls on *his* cellphone from the undercover officer concerning drug sales and (ii) Vargas Velez immediately acknowledging that the caller was trying to reach his brother Yani once the undercover officer began asking about the sale of drugs in nondescript terms.

---

[5] During the trial, the Government highlighted the significance of Vargas Velez referring to the undercover officer with the Spanish term "primo," which translates to "cousin," but which several witnesses testified to be a term of endearment in conversational Spanish. The Government argued that Vargas Velez's use of this term is evidence that he was familiar with the purpose of the calls with the undercover officer—i.e., the sale of illicit drugs.

5

(Dkt. #228-64 at 1).[6] And *third*, there is evidence that Vargas Velez voluntarily participated in the conspiracy by *repeatedly* allowing his cellphone to be used by Yani to communicate with the undercover officer regarding the sale of methamphetamine.[7]

Viewed in the light most favorable to the verdict, this evidence was sufficient for the jury to find beyond a reasonable doubt that Vargas Velez conspired to manufacture or distribute or conspired to possess with the intent to manufacture or distribute methamphetamine in violation of Section 846. Thus, the Court concludes that Vargas Velez is not entitled to a judgment of acquittal under Rule 29.

**B. Motion for New Trial**

The Court next addresses Vargas Velez's motion for a new trial under Rule 33. Vargas Velez argues that the Court should grant a new trial because the verdict "was against the weight of the evidence adduced." (Dkt. #224 at 1).

District courts have authority to vacate a verdict and grant a new trial if "justice so requires." FED. R. CRIM. P. 33(a). Broadly speaking, this power is exercised in two situations. The first is when "error infects the trial—perhaps the erroneous

---

[6] Further supporting Vargas Velez's knowledge of the conspiracy was his own statement of concern to the undercover officer that "[i]f the cops get us, we're gonna be fucked." (Dkt. #228-70 at 1).

[7] Other courts have similarly found as sufficient to support a conspiracy conviction evidence that a criminal defendant served as an intermediary facilitating the transaction. *See, e.g., United States v. Garcia*, 45 F.3d 196, at 198 (7th Cir. 1995) (affirming the defendant's conviction where he "acted as a middleman or broker" by "facilitating a drug deal" between his friend and an undercover officer); *United States v. Franklin*, 622 F.App'x 501, 513 (6th Cir. 2015) (finding a three-way conspiracy in part because one coconspirator served as an intermediary between the defendant and the undercover officer); *United States v. Cathey*, 494 F.App'x 633, 635 (7th Cir. 2012) (per curiam) (collecting cases and noting that "we and our sister circuits have affirmed the convictions of brokers (also called 'steerers' or 'middlemen') several times, both for conspiracy and for substantive offenses." (cleaned up)).

6

admission or exclusion of evidence, inflammatory comments by a lawyer, or faulty jury instructions." *Crittenden*, 46 F.4th at 296. The second is when "the court believes the evidence weighs 'heavily against the verdict.'" *Id.* (quoting *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997)).

Vargas Velez's argument fails under either situation. As to the first situation, Vargas Velez does not specifically point to any error from trial, instead merely reasserting "each and every ground previously set forth in all defense motions during trial and trial objections." (Dkt. #224 at 2). As Vargas Velez has failed to make any new arguments concerning his previous motions and objections, the Court declines to revisit its past rulings, and therefore, Vargas Velez has failed to show that any error has occurred in this case.

Concerning the second situation, the Court is put "in the unusual position of weighing the evidence and assessing the credibility of witnesses." *Crittenden*, 46 F.4th at 297 (cleaned up). The Court cannot "entirely usurp the jury's function" and set aside the verdict merely because it would have ruled the other way. *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005). Rather, the Court's "power to grant a new trial based on a different assessment of the evidence must be 'exercised with caution' and 'invoked only in exceptional cases.'" *Crittenden*, 46 F.4th at 297 (quoting *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971)). The Fifth Circuit, sitting en banc, recently clarified the governing standard:

> If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the court may set aside the verdict and grant a new trial. The power to grant a new trial on this ground should be invoked only in

7

>exceptional cases, where the evidence weighs heavily against the verdict.

*Id.* (cleaned up) (quoting 3 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 582 (4th ed. 2022)).

This is not one of the "exceptional cases" in which the Court has discretion to vacate the jury's verdict by ordering a new trial. Indeed, Vargas Velez points to *no* evidence that weighs against his conviction whatsoever. And as discussed above, the Government presented sufficient evidence for the jury to find that Vargas Velez conspired to manufacture or distribute or conspired to possess with the intent to manufacture or distribute methamphetamine. Vargas Velez provides no specific argument why the damning evidence against him in fact weighs against his conviction.

And here, the Government's case "did not depend on farfetched inferences or solely on the testimony of a cooperating codefendant." *Crittenden*, 46 F.4th at 299 (citations omitted). In fact, no cooperating codefendant testified at Vargas Velez's trial at all. And the key witnesses were not "obviously incredible." *Id.* Nor has Vargas Velez pointed to any "meaningful exculpatory evidence" or "a significant risk that the verdict turned on improper factors." *Id.* at 299–300. Because Vargas Velez has failed to show that the jury's verdict was against the great weight of the evidence or that a miscarriage of justice may have resulted, the Court has no basis to grant a new trial.

### III. CONCLUSION

For the foregoing reasons, Vargas Velez's Consolidated Post-Trial Motions Pursuant to Federal Rules of Criminal Procedure 29 & 33, (Dkt. #224), are **DENIED**.

**So ORDERED and SIGNED this 26th day of April, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE